**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**VICTOR BRITO,**

                    **Petitioner,**                    **09 Civ. 5754 (JGK)**

         **- against -**                    **MEMORANDUM OPINION AND**
                                              **ORDER**
**DAWSON BROWN, ACTING SUPERINTENDENT,**
**SING SING CORRECTIONAL FACILITY**

                    **Respondent.**
────────────────────────────────

**JOHN G. KOELTL, District Judge:**

        The petitioner, Victor Brito, brings this pro se petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The

petitioner was convicted after a jury trial in New York State

Supreme Court, Bronx County, of two counts of murder in the

second degree (N.Y. Penal Law § 125.25[1]), and was sentenced to

concurrent indeterminate terms of twenty-five years to life.

The judgment was entered on June 20, 2002.  The petitioner's

conviction was affirmed on October 4, 2007, by the Appellate

Division, First Department, and leave to appeal to the New York

Court of Appeals was denied on December 27, 2007.  People v.

Brito, 843 N.Y.S.2d 43 (App. Div. 2007), appeal denied, 880

N.E.2d 878 (N.Y. 2007).  The petitioner subsequently made a

motion to vacate the judgment pursuant to New York Criminal

Procedure Law § 440.10.  By order dated September 26, 2008, the

trial court denied the motion.  (Pimentel Decl. Ex. 6.)

The petitioner asserts the following six claims in his habeas corpus petition: (1) his conviction was against the weight of the evidence, (2) he was denied the right to a fair trial because the trial judge refused to give a specific jury charge regarding witness omissions, (3) he was denied the right to a fair trial because of prosecutorial misconduct, (4) he was entitled to a lesser charge of depraved indifference murder, (5) he was denied the right to effective assistance of counsel, and (6) eyewitness identification was inconsistent with testimony that was presented at trial.

I

There was sufficient evidence at trial for the jury to find the following facts.

On January 22, 1993, the petitioner began working as a drug dealer for his brother, Happy, at 55 Evelyn Place, Apartment 4A, in Bronx County. (Tr. 204:3-25.) The petitioner took over a position previously held by Johnny Concepcion, who had been fired that day for arriving to work late. (Tr. 204:12-23.) That night, the victims, Francis Ramirez and Steven Moses, entered Apartment 4A and attempted to rob the petitioner. (Tr. 205:14-207:23, 211:10-15.) In response, the petitioner shot the two men. (Tr. 207:24-25, 211:14-15.) Early the next morning, two other drug dealers that worked for Happy, Domingo Guillen

and Jose Perez, visited Apartment 4A and saw the bodies of the two victims.  (Tr. 213:19-25, 350:10-352:13.)

Two nights after the shooting, January 24, 1993, the petitioner, Happy, Mr. Guillen, and two other individuals named Leito and Bimbo proceeded to dispose of the victims' bodies. (Tr. 236:1-24.)  Together, they drove to the Henry Hudson State Parkway and dropped off the victims' bodies.  (Tr. 238:20-240:23.)

The next day, January 25, 1993, police officers discovered the bodies of Francis Ramirez and Steven Moses on the Henry Hudson Parkway.  (Tr. 176:17-177:23.)  The case went unsolved until 1999, when Detective Kevin Lauler of the Cold Case Squad was assigned to the case.  (Tr. 436:25-437:4.)  As part of his investigation, he interviewed Messrs. Concepcion, Guillen, and Perez.  (Tr. 440:20-23, 443:6-14, 449:16-451:11.)

On August 16, 2000, a Grand Jury in Bronx County returned an indictment charging the petitioner with second degree murder and other offenses.  A jury returned a verdict of guilty on two counts of murder in the second degree (N.Y. Penal Law § 125.25[1]).  On June 20, 2002, a judgment of conviction was entered.   The petitioner was sentenced to concurrent indeterminate terms of twenty-five years to life.

The petitioner, represented by counsel, filed a timely direct appeal and also filed additional grounds for appeal in a

pro se supplemental brief.  The New York State Supreme Court, Appellate Division, First Department, affirmed the petitioner's conviction on October 4, 2007, rejecting all of the petitioner's claims.  See Brito, 843 N.Y.S.2d at 44.  The petitioner's application for leave to appeal to the New York State Court of Appeals was denied on December 27, 2007.  See Brito, 880 N.E.2d at 878.

By pro se papers dated March 22, 2008, the petitioner moved before the New York State Supreme Court to vacate the judgment of conviction pursuant to New York Criminal Procedure Law § 440.10.  The trial court dismissed all claims except the petitioner's ineffective assistance of counsel claim pursuant to New York Criminal Procedure Law § 440.10(a) and (c), finding that all of the petitioner's claims, except the ineffective assistance of counsel claim, were already decided or should have been raised on direct appeal.  (See Pimentel Decl. Ex. 6 at 1-2.)  The trial court also found the petitioner's ineffective assistance of counsel claim to be without merit.  (See Pimentel Decl. Ex. 6 at 2-3.)  Accordingly, the trial court denied the petitioner's motion to vacate his conviction by an order dated September 26, 2008.  (See Pimentel Decl. Ex. 6.)  This petition for a writ of habeas corpus followed.

**II**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); see also Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006); Muir v. New York, No. 07 Civ. 7573, 2010 WL 2144250, at *3 (S.D.N.Y. May 26, 2010).

A state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's result. Williams v. Taylor, 529 U.S. 362, 405 (2000).

A state court decision involves "an unreasonable application of . . . clearly established Federal law" when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's

5

case . . . ." <u>Jones v. Walsh</u>, No. 06 Civ. 225, 2007 WL 4563443, at *5 (S.D.N.Y. Dec. 27, 2007) (quoting <u>Williams</u>, 529 U.S. at 407-08).  To meet that standard, "the state court decision [must] be more than incorrect or erroneous . . . [it] must be objectively unreasonable." <u>Jones</u>, 2007 WL 4563443, at *5 (quoting <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)).  "[I]t is well established in [this] circuit that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." <u>Cotto v. Herbert</u>, 331 F.3d 217, 248 (2d Cir. 2003) (internal quotation marks omitted); <u>see also</u> <u>Muir</u>, 2010 WL 2144250, at *4

Because the petitioner is proceeding pro se, his petition is "read liberally and should be interpreted 'to raise the strongest arguments that [it] suggest[s].'" <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)); <u>see also</u> <u>Muir</u>, 2010 WL 2144250, at *4.


                               III

                               A.

The petitioner's first claim alleges that his conviction was against the weight of the evidence.  However, a "weight of the evidence" claim falls under state law and is not cognizable

                                6

on habeas corpus.  See Douglas v. Portuondo, 232 F. Supp. 2d
106, 116 (S.D.N.Y. 2002); Correa v. Duncan, 172 F. Supp. 2d 378,
381 (E.D.N.Y. 2001).  This is distinguishable from a claim
alleging that the evidence produced at trial was legally
insufficient to support a conviction, which is a cognizable
habeas corpus claim.  See Jackson v. Virginia, 443 U.S. 307, 324
(1979).  Because the petitioner is acting pro se, the Court will
construe his petition liberally and interpret his first claim to
be a challenge to his conviction on the basis of legally
insufficient evidence.

A petitioner challenging the sufficiency of the evidence
supporting a conviction must overcome a "very heavy burden."
Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995).  A reviewing
court must view "the evidence in the light most favorable to the
prosecution," and may only grant habeas relief if the petitioner
has shown that "upon the record evidence adduced at the trial no
rational trier of fact could have found proof of guilt beyond a
reasonable doubt."  Jackson, 443 U.S. at 319, 324; see also
Hawkins v. West, 706 F.2d 437, 439 (2d Cir. 1983).  A reviewing
court must defer to the trial court in making "assessments of
the weight of the evidence or the credibility of witnesses" and
construe "all possible inferences that may be drawn from the
evidence" in the prosecution's favor.  Maldonado v. Scully, 86

7

F.3d 32, 35 (2d Cir. 1996); see also Muir, 2010 WL 2144250, at
*4.

        In reviewing the legal sufficiency of the evidence of a
state conviction, this Court looks first to state law to
determine the elements of the crime.  Quartararo v. Hanslmaier,
186 F.3d 91, 97 (2d Cir. 1999).  Under New York Penal Law, a
person is guilty of murder in the second degree when "with
intent to cause the death of another person, he causes the death
of such person or of a third person."  N.Y. Penal Law §
125.25[1].

        Viewed in the light most favorable to the prosecution, the
evidence produced at trial was sufficient for a rational trier
of fact to find beyond a reasonable doubt that the petitioner
shot and killed the victims with the intent to cause their
deaths.  At trial, Mssrs. Concepcion, Guillen, and Perez
testified that the petitioner admitted to shooting the victims.
(Tr. 132:13-25, 207:12-25, 356:4-6.)  Mr. Guillen and Mr. Perez
testified to seeing the victims' bodies in the apartment before
the bodies were removed.  (Tr. 213:19-25, 351:18-352:13.)  Mr.
Guillen further testified that he acted as a lookout while the
petitioner dumped the bodies onto the side of the Henry Hudson
Parkway.  (Tr. 233:12-240:18.)  By the Grand Jury testimony of
Police Officer Nicholas Nafpliotis, which was admitted pursuant
to a stipulation, the jury learned that the bodies of the

victims were eventually discovered on the side of the Henry Hudson Parkway.  (Tr. 176:22-177:3.)  At trial, Mr. Guillen, through photographs, identified the bodies that he saw in Apartment 4A.  (Tr. 214:10-215:19.)

The petitioner challenged the credibility of the prosecution's witnesses on appeal, but the Appellate Division reasonably found that there was no basis for disturbing the trial court's determinations concerning witness credibility. See Brito, 843 N.Y.S.2d at 44.  The petitioner also pointed out the lack of physical evidence in the case, but it is well settled that a conviction can be based solely on witness testimony without any corroborating physical evidence.  See, e.g., United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997) ("[A]ny lack of corroboration [with physical evidence] goes only to the weight of the evidence, not to its sufficiency. The weight is a matter for argument to the jury, not a ground for reversal on appeal.") (internal quotation marks, citations omitted); Simpson v. Portuondo, No. 01 Civ. 1379, 2001 WL 830946, at *9 (S.D.N.Y. July 12, 2001) ("[T]here is no requirement that eyewitness testimony be corroborated by physical evidence.")

Viewed in its entirety, the evidence in this case was sufficient to allow a jury to find the petitioner guilty beyond a reasonable doubt.  Therefore, the Appellate Division's

decision to deny this claim was not contrary to, nor an unreasonable application of, federal law.  Accordingly, this claim is denied.

B.

The petitioner's second claim alleges that the trial court denied him the right to a fair trial by refusing to give a specific jury instruction requesting that the jurors consider a witness's prior factual omissions when assessing that witness's credibility.

The Supreme Court has instructed that a state court's failure to give a particular jury instruction does not raise a federal question unless the failure to give the instruction "'so infected the entire trial that the resulting conviction violates due process.'"  Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  Federal courts "must of course defer to state-court interpretations of the state's laws, so long as those interpretations are themselves constitutional" when deciding whether the evidence requires a particular jury instruction under state law.  Davis v. Strack, 270 F.3d 111, 123 n.4 (2d Cir. 2001); see also Graham v. Lape, 476 F. Supp. 2d 399, 404 (S.D.N.Y. 2007).  Generally, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

10

In this case, the trial court instructed the jury that it could consider any discrepancies or inconsistencies in a witness's testimony in assessing that witness's credibility. (Tr. 584:2-7.)  The court also informed the jury that it could "cast aside" any testimony that it deemed to be "exaggerated, inaccurate or willfully perverted," (Tr. 585:15-20.)  as well as any testimony that it deemed to be false.  (Tr. 584:14-19.)

"A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."  <u>Cupp</u>, 414 U.S. at 146-147.  Viewed in its entirety, the charge was broad enough to inform the jury that it could consider witness omissions in making credibility determinations.  The jury could infer that testimonial discrepancies or inconsistencies included a witness's prior factual omissions, which the jury could consider in assessing that witness's credibility.  The jury could also find that a witness's prior omission raised a suspicion that the witness's testimony was exaggerated, inaccurate, willfully perverted, or even false, which would allow the jury to discredit the witness entirely.

Furthermore, at trial, the parties entered into a stipulation that Mr. Perez and Mr. Guillen had made omissions of facts in their previous interviews with law enforcement officers.  During the jury charge, the court informed the jury

that it could consider stipulations as evidence.  (Tr. 586:24-587:4.)  Additionally, in summation, defense counsel argued that the jury should discredit the testimony of Mr. Guillen and Mr. Perez because they had provided information during their testimony that they had never revealed to anyone before.  (Tr. 523:4-11.)  Although this argument was not evidence, the court instructed the jury that it could give consideration to the arguments of counsel if it found the arguments to be logical. (Tr. 579:18-24.)  These instructions regarding stipulations and summations, although not as direct as an omissions charge, communicated to the jury that it could take into account a witness's prior omissions in assessing that witness's credibility.

The Appellate Division was correct when it found that the trial court's rejection of the requested omissions charge did not "so infect[] the entire trial that the resulting conviction violate[d] due process."  Cupp, 414 U.S. at 147.  Accordingly, this claim is denied.

### C.

The petitioner's third claim alleges prosecutorial misconduct, primarily at the summation stage of the trial. Specifically, the petitioner alleges that the prosecutor acted improperly by (1) making statements concerning his own integrity, (2) by stating that although Mr. Gonzalez committed

perjury, Mr. Gonzalez's testimony was likely based on
information that he had received from a truthful source, and (3)
by stating that Mr. Guillen's testimony was credible because
Federal agencies had implicitly vouched for his credibility by
granting him permission to return to the United States to
testify.

The Appellate Division found that the petitioner's "claims
of prosecutorial misconduct are unpreserved and we decline to
review them in the interest of justice.  Were we to review them,
we would find no basis for reversal."  Brito, 843 N.Y.S.2d at
44.
New York courts frequently find a general objection voiced
during summations does not preserve more specific claims later
brought before an appellate court.  See, e.g., People v. Dien,
571 N.E.2d 69, 69-70 (N.Y. 1991) (finding unpreserved the
appellant's claim that the prosecutor's summation comment
violated his rights to a fair trial and to equal protection
under the law when the "defendant made only a general
objection"); People v. Rivera, 537 N.E.2d 618, 618 (N.Y. 1989)
(same); see also Ashley v. Burge, No. 05 Civ. 4497, 2006 WL
3327589, at *11 (S.D.N.Y. Nov. 3, 2006).

In any event, the merits of this claim do not support
habeas relief.  Prosecutorial misconduct amounting to a due
process violation requires more than a showing that "the

13

prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Darden v. Wainwright, 699 F.2d 1031, 1036 (11th Cir. 1983)). The Supreme Court, in Donnelly v. DeChristoforo, 416 U.S. 637 (1974), stated that a prosecutor's trial remarks that did not directly infringe on a constitutionally protected right, would not violate a defendant's right to due process unless they rendered the defendant's trial fundamentally unfair. Id. at 643-645; see also Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (stating a three-factor test in determining "substantial prejudice" from a prosecutor's summation, including the severity of the misconduct, measures adopted to cure the misconduct, and the certainty of conviction absent the improper statements (citing United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam)); Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir. 1986) ("[C]onstitutional error occurs only when the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair."); Ashley, 2006 WL 3327589, at *11.

The prosecutor properly moved to strike Mr. Gonzalez's testimony after learning that he had committed perjury. Subsequently, the parties entered into a stipulation that Mr. Gonzalez was incarcerated at the time he allegedly observed the

crime, and thus the perjurious nature of Mr. Gonzalez's
testimony was revealed to the jury.

At summation, the prosecutor conjectured that Mr. Gonzalez
could have talked to someone who had known the truth and that
Mr. Gonzalez subsequently came forward with this information in
an effort to "do himself some good." (Tr. 538:6-19.)  These
comments had no basis in evidence, and in response to defense
counsel's objection, while the court overruled the objection,
the court stated that "[t]he jury knows this is not evidence,
merely argument." (Tr. 538:21-22.)  The prosecutor also made
apologetic comments to the jury regarding Mr. Gonzalez's
testimony: "I am ashamed, embarrassed and angry. . . . Miguel
Gonzalez is my witness." (Tr. 526:21-25.)  The prosecutor also
attempted to support the credibility of Mr. Guillen by stating
that federal agencies had granted "permission for him to come to
this country, to come to this courtroom to testify before you."
(Tr. 542:13-15.)

These statements by the prosecutor, however, were made in
direct response to defense counsel's preceding comments on the
testimony of Mr. Gonzalez and Mr. Guillen.  With respect to Mr.
Gonzalez, defense counsel stated at summation that "we know that
people lied in this courtroom to you.  You saw it for yourself
with respect to Mr. Gonzalez." (Tr. 517:9-11.)  With respect to
Mr. Guillen, defense counsel highlighted an inconsistency

15

between the testimony of Mr. Guillen and Mr. Perez and told the jury that "they're lying to you. . . . [T]hey're not credible and therefore not believable."  (Tr. 522:15-20.)

At the summation stage, "[a] prosecutor's comments must be evaluated in light of the defense argument that preceded it." Darden, 477 U.S. at 179.  A prosecutor is "permitted to respond to arguments impugning the integrity of its case." See United States v. Bautista, 23 F.3d 726, 733 (2d Cir. 1994) (internal quotation marks, citations omitted).  Viewed in this context, the prosecutor's comments were not so severe as to have deprived the petitioner of a fair trial.  See Concepcion v. Portuondo, No. 97 Civ. 3183, 1999 WL 604951, at *5 (S.D.N.Y. Aug. 10, 1999).

Thus, the Appellate Division's decision to reject the petitioner's claim of prosecutorial misconduct was not contrary to, nor an unreasonable application of, clearly established federal law.  Accordingly, this claim is denied.

D.

The petitioner's fourth claim alleges that the trial court's refusal to charge the jury on the lesser-included offense of depraved indifference murder violated his right to a fair trial.

In Beck v. Alabama, 447 U.S. 625 (1980), the Supreme Court held that due process requires the submission of jury

16

instructions on lesser included offenses in capital cases but declined to consider whether such instructions are required in non-capital cases. Id. at 639 n. 14. The Circuits are in some disagreement about whether the failure to include a lesser included offense instruction can rise to the level of a constitutional violation in a non-capital case. See Robertson v. Hanks 140 F.3d 707, 709-11 (7th Cir. 1998) (summarizing cases). The Court of Appeals for the Second Circuit has not decided the question. See Jones v. Hoffman, 86 F.3d 46, 48 (2nd Cir. 1996). However, in Jones, the Court of Appeals held that a claimed error in failing to include a lesser included offense instruction in a non-capital case is not a cognizable claim in a habeas corpus proceeding. Id; see also Turner v. Marshall, 63 F.3d 807, 818 (9th Cir. 1995). The Court of Appeals reasoned that under Teague v. Lane, 489 U.S. 288 (1989), a habeas petition cannot be used to apply a new rule of law. Id. at 301. The Court of Appeals also held that none of the exceptions to Teague would apply to allow consideration of a claimed constitutional violation for failure to include a lesser included offense instruction in a non-capital case. Jones, 86 F.3d at 48. Therefore, Jones and Teague preclude consideration of the petitioner's claim that he was entitled to the lesser

charge of depraved indifference murder.  See Till v. Miller, No.
96 Civ. 4387, 1998 WL 397848, at *4 (S.D.N.Y. July 16, 1998).[1]

Furthermore, the facts of this case would not have
permitted a charge of depraved indifference murder.  Under New
York law, a trial court

> may submit in the alternative any lesser
> included offense if there is a reasonable
> view of the evidence which would support a
> finding that the defendant committed such
> lesser offense but did not commit the
> greater.  If there is no reasonable view of
> the evidence which would support such a
> finding, the court may not submit such
> lesser offense.

N.Y. Crim. Proc. Law § 300.50[1] (emphasis added).  A defendant
is guilty of depraved indifference murder when "[u]nder
circumstances evincing a depraved indifference to human life, he
recklessly engages in conduct which creates a grave risk of
death to another person, and thereby causes the death of another
person."  N.Y. Penal Law § 125.25[2].

"Twin-count" indictments charging both intentional homicide
and depraved indifference murder are rare, and a submission to
the jury of both counts is even rarer.  People v. Suarez, 844
N.E.2d 721, 731 (N.Y. 2005).  This is generally because "by the

---

[1] This result also follows from the statutory scope of review of the state
court's determination of the petitioner's claim.  It cannot be said that the
state court's determination "resulted in a decision that was contrary to, or
involved an unreasonable application of clearly established Federal law, as
determined by the Supreme Court of the United States."  See 28 U.S.C. §
2254(d)(1).  The Supreme Court has declined to rule on whether the
Constitution requires charges of lesser included offenses in non-capital
cases.  See Beck, 447 U.S. at 638 n. 14; see also Till, 1998 WL 397848, at *4
n. 4.

time the proof has been presented, it should be obvious in most cases whether or not the evidence establishes 'an intentional [killing] or no other'" Id. (quoting People v. Wall, 278 N.E.2d 341 (N.Y. 1971)) (alteration in original).  Thus, in cases involving twin-count indictments, trial courts should generally be able to dismiss the count that is least applicable to the facts.  Id.

     In this case, there is no reasonable view of the evidence that would have supported a finding that the petitioner committed depraved indifference murder and not intentional murder.  Mr. Guillen testified at trial that the petitioner had told him that "two guys were going to hold him up, and he had to defend himself," and so the petitioner "shot them."  (Tr. 207:21-25.)  Mr. Perez also testified to hearing the petitioner make similar statements.  (Tr. 353:12-13.)  These testimonies do not support the conclusion that the petitioner shot at the victims recklessly, but rather, that he did so intentionally, in an effort to defend himself.  In addition, the fact that the petitioner shot the victims a total of five times (Tr. 183:3-4, 184:21-22.)  belies the argument that he acted with depraved indifference.  See, e.g., People v. Payne, 819 N.E.2d 634, 637 (N.Y. 2004) (observing that "[f]iring more rounds or inflicting more wounds does not make the act more depravedly indifferent, but more intentional," and that "a one-on-one shooting . . . can

almost never qualify as depraved indifference murder") (emphasis
in original).  Moreover, the facts of this case bear little
resemblance to the facts of other depraved indifference murder
cases.  See, e.g., People v. Shin, 877 N.Y.S.2d 85 (N.Y. App.
Div. 2009) (driving a car at high speed into a crowd); People v.
Umanzor, 777 N.Y.S.2d 151 (N.Y. App. Div. 2004) (setting fire to
the exit stairway of apartment building); People v. Callender,
760 N.Y.S.2d 408 (N.Y. App. Div. 2003) (firing shots at a
crowd).

For these reasons, a charge of depraved indifference murder
would have been unwarranted.  Therefore, the petitioner's
challenge to the Appellate Division's determination is without
merit.  Accordingly, this claim is denied.

E.

The petitioner's fifth claim alleges that he was denied
effective assistance of counsel when defense counsel failed to
conduct a pre-trial investigation of three witnesses who
allegedly possessed exculpatory evidence.

The Appellate Division denied review of this claim because
it involved matters outside the record.  Brito, 843 N.Y.S.2d at
44.  The petitioner renewed this claim in a motion to vacate his
conviction pursuant to New York Criminal Procedure Law § 440.10.
The Bronx County Supreme Court denied the claim because it was
speculative and there was no indication of what the witnesses

20

would have testified to, or that they were even available at the time of trial.  (Pimentel Decl. Ex. 6 at 2-3.)[2]

To establish a claim of ineffective assistance of counsel, the petitioner must show both that: (1) his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) that his counsel's deficient performance was prejudicial to his case.  See Strickland v. Washington, 466 U.S. 668, 687 (1984); Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995); see also Garcia-Giraldo v. United States, 691 F. Supp. 2d 500, 510 (S.D.N.Y. 2010).

To meet the first prong of the Strickland test, the petitioner must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  Strickland, 466 U.S. at 687.  There is a "strong presumption" that defense counsel's conduct fell within the broad spectrum of reasonable professional assistance, and a petitioner bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was

---

[2] The respondent has not claimed that this issue was not exhausted in the state courts even though there is no indication that the petitioner sought leave to appeal the trial court's dismissal of his § 440.10 motion.  Because the State did not raise the issue of exhaustion, this Court need not dismiss this claim on procedural grounds.  See Sanders v. Sullivan, 863 F.2d 218, 221-22 (2d Cir. 1988). In any event, the issue is without merit, and the claim can be dismissed on the merits.  See 28 U.S.C. § 2254(b)(2).

not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466 U.S. at 688-89); see also Garcia-Giraldo, 691 F. Supp. 2d at 510.

To meet the second prong of the Strickland test, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Garcia-Giraldo, 691 F. Supp. 2d at 510.

With respect to the first prong of the Strickland test, the petitioner has failed to demonstrate that his counsel's performance was objectively unreasonable. The petitioner alleges that three witnesses -- Ms. Doris Santiago, Ms. Divina Aquero, and Mr. Luis Antonio (Tony) Garcia -- possessed exculpatory evidence that defense counsel failed to investigate and present at trial. The petitioner bases his assertion on information contained in several police interviews that were conducted in 1993, about nine years before the trial.

Ms. Santiago stated in her interview that on January 22, 1993, she attended a saint's feast at an apartment on St. Andrews Avenue, around 183rd Street. (Pimentel Decl. Ex. 4 (hereinafter "Pet'r's 440.10 Mot.") at Ex. A.) One of the victims, Francis Ramirez, also attended the feast. (Pet'r's

22

440.10 Mot. Ex. A.)  While in the apartment, Ms. Santiago witnessed a commotion in one of the back rooms that eventually carried out into the street.  (Pet'r's 440.10 Mot. Ex. A.)

Ms. Luisa Ledesma, the woman who hosted the saint's feast, stated that she followed the altercation outside, and Francis Ramirez got involved in the altercation in an effort to protect her.  (Pet'r's 440.10 Mot. Ex. B.)  Ms. Ledesma stated that Francis Ramirez subsequently got into a separate altercation with a group of young black teenagers that were walking by, one of whom pulled out a gun.  (Pet'r's 440.10 Mot. Ex. B.)  Ms. Ledesma stated that at this point she ran back to the apartment and told Ms. Domingo to take Francis Ramirez home because he was about to be shot.  (Pet'r's 440.10 Mot. Ex. B.)

Ms. Santiago stated that after hearing this, she approached Francis Ramirez, convinced him to leave, and then left herself.  (Pet'r's 440.10 Mot. Ex. A.)  Later that evening, Francis Ramirez returned to Ms. Ledesma's apartment with two other men.  (Pet'r's 440.10 Mot. Ex. B.)  Francis Ramirez then spoke with Mr. Garcia, Ms. Ledesma's cousin, and eventually all four men left the apartment.  (Pet'r's 440.10 Mot. Ex. B.)

Ms. Aquero, in her interview, stated that she spoke with Mr. Garcia the next day, and he informed her that he had accompanied Francis Ramirez and the two other men to an apartment to buy cocaine.  (Pet'r's 440.10 Mot. Ex. C.)  Mr.

Garcia told Ms. Aquero that he waited in the hallway while the three men entered the apartment.  (Pet'r's 440.10 Mot. Ex. C.)  Mr. Garcia told her that he heard shots fired and saw one black male running out of the apartment.  (Pet'r's 440.10 Mot. Ex. C.)  Mr. Garcia then ran back to Ms. Ledesma's apartment.  (Pet'r's 440.10 Mot. Ex. C.)

In attempting to locate Mr. Garcia, Detective Lugo interviewed Ms. Daniela Garcia, Mr. Garcia's mother, but she proved to be "uncooperative, [and] refuse[d] to . . . provid[e] information as to her son's whereabouts."  (Pet'r's 440.10 Mot. Ex. D.)

"[A]pplying a heavy measure of deference to counsel's judgments" regarding the level of necessary investigation, Strickland, 466 U.S. at 691, defense counsel's decision not to investigate these witnesses further or to present them at trial was not objectively unreasonable.  In general, when there is "reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Id at 691.  Defense counsel reported to the District Attorney's Office that he was aware of the investigative reports at the time of trial, but decided not to pursue them because the crime occurred almost ten years before the trial, and the "witnesses were not available to him."  (Pimintel June 20, 2008 Aff.,

attached as Ex. 5 to Pimintel Decl.)  Moreover, defense counsel
recalled that at least one of the witnesses would not speak with
him outside the prosecutor's presence.  (Id.)

In any event, the state court was not unreasonable in
denying the claim of ineffective assistance of counsel.  With
respect to Ms. Santiago and Ms. Aquero, their interviews did not
demonstrate that they possessed any exculpatory evidence.  Ms.
Santiago referred to an altercation that occurred in the street
outside the saint's feast, but this incident appears to be
unrelated to the actual shooting, which occurred at a different
location.  Ms. Aquero's interview only establishes that Mr.
Garcia was located near the scene of the shooting.  Mr. Garcia
was not a witness at the actual shooting and it is clear from
the interview with his mother that he was unavailable for
questioning.  Defense counsel was not under a duty to
"investigate comprehensively every lead . . . ."  Greiner v.
Wells, 417 F.3d 305, 321 (2d Cir. 2005).  Indeed, defense
counsel's performance, viewed as a whole, was objectively
reasonable.  Defense counsel successfully impeached Mr. Gonzalez
at trial, attacked the credibility of the prosecution's
witnesses, and emphasized the lack of physical evidence.

Moreover, the petitioner has failed to establish that
defense counsel's failure to investigate and present these
witnesses resulted in any prejudice under Strickland.   Ms.

25

Santiago's interview provides little more than a background of
the events preceding the shooting.  Similarly, Ms. Aquero's
interview did not establish that she had witnessed any part of
the actual shooting.  Thus, the petitioner's argument that Ms.
Santiago and Ms. Aquero could have assisted in identifying the
"true perpetrators of the double murder" (Pet'r's 440.10 Mot.
23.) is pure speculation.  See Eisemann v. Herbert, 401 F.3d
102, 108 (2d Cir. 2005) (finding the petitioner's assertion that
a witness would have provided exculpatory testimony to be
speculation because there was no evidence in the record that
suggested that the witness possessed such information); see also
United States v. Vargas, 920 F.2d 167, 169-170 (2d Cir. 1990)
(finding that a conclusory affidavit purporting to exculpate
defendant did not establish that defense counsel was ineffective
for failing to call affiant as a witness).  The purported
exculpatory evidence, if any, would most likely have come from
Mr. Garcia, who had accompanied Francis Ramirez to the apartment
where he was shot.  According to Ms. Aquero, however, Mr. Garcia
was in the hallway at the time the shots were fired, and he made
no mention of actually witnessing the shooting.  In addition,
the police were unable to locate Mr. Garcia.  Thus, the
petitioner's assertion that Mr. Garcia would have testified as
to who the murderers were is also speculation.  See Rodriguez v.
Portuondo, No. 01 Civ. 0547, 2006 WL 2168314, at *8 (S.D.N.Y.

Aug. 1, 2006) (finding that defense counsel's failure to locate an alleged exculpatory witness raised "no legitimate doubt as to the outcome of the trial" because the witness's address was unknown and there was little chance that the witness could have been located prior to trial); see also Morales v. United States, 199 F.3d 1322 (2d Cir. 1999) (finding appellant's conclusory assertions that witnesses were available and willing to testify at trial insufficient to establish prejudice "absent a more clear indication that the [witnesses] . . . would have testified at appellant's trial").

For these reasons, defense counsel's failure to investigate and present these witnesses at trial did not amount to ineffective assistance of counsel under Strickland.  Thus, the Bronx County Supreme Court's determination that this claim was without merit was not contrary to, nor an unreasonable application of, federal law.  Accordingly, this claim is denied.

F.

The petitioner's sixth claim alleges that the prosecutor's eyewitness identification testimony was inconsistent with testimony presented at trial.  The petitioner's argument focuses on the sufficiency of evidence presented at trial.  Thus, this claim is similar to the petitioner's first claim in that it alleges that the conviction was "against the weight of credible evidence."  (Pet'r's 440.10 Mot. 17.)  As discussed above, a

27

claim that a conviction is against the weight of the evidence is not a cognizable habeas corpus claim.  See Douglas, 232 F. Supp. 2d at 116; Correa, 172 F. Supp. 2d at 381.  As with the petitioner's first claim, the Court will construe this claim liberally and interpret it to be a challenge to the petitioner's conviction on the basis of legally insufficient evidence.[3]

The petitioner is essentially arguing that his conviction should be set aside because the witnesses presented at trial were not credible.  The petitioner argues that Mr. Gonzalez's testimony was unreliable because he committed perjury. Similarly, the petitioner asserts that the testimony of Mr. Guillen and Mr. Perez was also unreliable because they provided inconsistent testimony and also had motivations to lie.  The petitioner further argues that the lack of physical evidence in this case establishes that his conviction was based on insufficient evidence.

The credibility of the witnesses was a matter for the jury and the Court could not find that the state court's decision to reject the petitioner's claim was an unreasonable application of clearly established federal law.  See Maldonado, 86 F.3d at 35. The testimony in this case was sufficient to establish the

_____

[3] The petitioner's argument on this claim is inconsistent.  In his Supplemental Brief to the Appellate Division, the petitioner referred to the testimonies of Lewis Edgecombe, Samantha Horn, Michael Harris, and Danyelle Boyd.  None of these witnesses testified at trial.  The petitioner also stated that the victim was Ronald Jackson, who was not a victim in this case.

petitioner's guilt beyond a reasonable doubt and no physical evidence was necessary. See Simpson, 2001 WL 830946, at *9 ("[T]here is no requirement that eyewitness testimony be corroborated by physical evidence.").

Therefore, the Appellate Division's decision to deny this claim was not contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, this claim is denied.

CONCLUSION

For the reasons explained above, the petition for habeas corpus is **denied**. Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). The Clerk is directed to enter judgment dismissing the petition and closing this case.

SO ORDERED.

Dated:     New York, New York
           April 2/ , 2011

                                    John G. Koeltl
                              United States District Judge